Harold A. Felix, J.
The primary question the court has under consideration is whether the evidence establishing the commission of an act which, if committed by an adult, would be the unlawful possession of narcotics, was privileged and accordingly inadmissible, necessitating the dismissal of the petition herein.
The respondent argues that the disclosure to the police of narcotics found on the person of the respondent while being examined in the emergency room of Saint Luke’s Hospital on the night of June 15, 1972 was a violation of the physician-patient privilege (CPLR 4504, subd. [a]). That section reads as follows: “ (a) Confidential information privileged. Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing or dentistry shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity. ’ ’
The testimony reveals that the respondent was brought into the hospital in an unconscious state and placed in one of the emergency rooms where the petitioner physician diagnosed the patient as suffering from a respiratory distress syndrome, the result of an overdose of drugs; that -such condition required an immediate injection of a narcotic antagonist; that following this treatment the physician went through the pockets of respondent’s dungarees to ascertain if respondent had on his person anything revealing a physical condition that would contraindicate the treatment already given. In one of the respondent’s pockets, the physician found an envelope containing some white powder. When respondent’s dungarees were removed for the *193 purpose of a neurological examination which could not he conducted with the respondent attired, protruding from respondent’s undershorts in the area of his groin was a plastic hag also containing a whitish powder. The police were called, the envelope and plastic bag turned over to them, and the respondent arrested. Subsequent analysis found the contents of the envelope and plastic bag to be heroin and the proof adduced showed the former to contain 110 grains and the latter 56 grains of that narcotic drug.
While concededly the information (the possession by the respondent of what was found to be heroin) was acquired in attending the respondent in a professional capacity by the physician petitioner, such information was not necessary to enable him to act in that capacity. The respondent’s condition had already been diagnosed as one evidencing a respiratory arrest syndrome caused by a narcotic overdose and the standard medical treatment procedure of injecting a narcotic antagonist had already been made. The respondent’s apparel was examined, as the doctor testified, for documents, tags or other indicia that might reveal that the respondent had diabetes, allergies or other conditions that might make necessary different procedures or modes of treatment than already prescribed.
I am constrained to conclude, and so find, that the physician’s action in turning over the information to the police, i.e., the envelope and the plastic bag which were found to have contained heroin was not violative of the physician-patient privilege set forth in subdivision (a) of CPLR 4504 as argued by the respondent. (See People v. Capra, 17 N Y 2d 670; Mayer v. Albany Med. Center Hosp., 56 Misc 2d 239.)
Further, I conclude, and so find, that the respondent, by the necessary quantum of proof by beyond a reasonable doubt, committed an act which if committed by an adult would be the unlawful possession of narcotic drugs. (Penal Law, § 220.15, subd. 2.)
The probation service is directed to investigate and report. Respondent is paroled to his parent and the proceedings calendared January 9,1973 for dispositional hearing.